UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT KAUR, HARNOOR KAUR, GURKIRAT SINGH, and THE ESTATE OF KHEM SINGH, <br><br> Plaintiffs, <br><br> v. <br><br> ED ALAMEIDA, JR., et al., <br><br> Defendants. | 1:05-cv-00276 OWW <br><br> MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) (Docs. 39, 48) |

## I.    INTRODUCTION

All defendants move to dismiss the complaint of plaintiffs BALJIT KAUR, HARNOOR KAUR, GURKIRAT SINGH, and THE ESTATE OF KHEM SINGH ("plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant RONALD ROSTON, M.D., filed a separate motion to dismiss (Doc. 39) and the remaining defendants filed a joint motion to dismiss (Doc. 48).

1

## II.   **PROCEDURAL HISTORY**

This civil rights action arises out of events surrounding the incarceration and death of Khem Singh ("Mr. Singh"), who was at all relevant times a state prisoner at the Substance Abuse Treatment Facility in Corcoran, California ("SATF").  This case is brought on behalf of Mr. Singh by his wife, Baljit Kaur (who is Mr. Singh's successor-in-interest), his daughter Harnoor Kaur, and his son Gurkirat Singh.

Plaintiffs filed their civil rights complaint on February 14, 2005.  (Doc. 1, Compl.)  Plaintiffs filed the operative First Amended Complaint on March 24, 2005.  (Doc. 13, "AC")  The following eleven (11) claims are set forth in Plaintiffs' First Amended Complaint:

(1) Claim Under 42 U.S.C. § 1983 for Violation of Eighth and Fourteenth Amendments (Failure to Provide Adequate Medical Care);

(2) Claim Under 42 U.S.C. § 1983 for Violation of First Amendment (Freedom of Religion);

(3) Claim Under 42 U.S.C. § 1983 for Violation of Fourteenth Amendment Equal Protection Clause (Discrimination Based on Decedent's Race and National Origin);

(4) Violation of the Americans With Disabilities Act of 1990 ("ADA");

(5) Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794);

(6) Violation of 42 U.S.C. § 1983 for Failure to Train, Supervise, and Discipline;

(7) Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, *et seq.* (Discrimination Under Program Receiving Federal Financial Assistance Based on Race and National Origin);

(8) Claim Under 42 U.S.C. § 1983 for Violation of

**2**

Fourteenth Amendment Right to "Family Relations";

(9)   Violation of United States Treaty (International Covenant on Civil and Political Rights); Violation of Fifth and Eighth Amendments (Cruel and Unusual Punishment); Violation of United States Treaty (International Convention on the Elimination of all Forms of Racial Discrimination);

(10)  Violation of Cal. Govt. Code § 845.6 (Failure to Summon Medical Care); and

(11)  Violation of Cal. Welf. & Inst. Code § 15600, *et seq.* (Elder Abuse).

Dr. ROSTON moved to dismiss the complaint on May 20, 2005. (Doc. 39, Roston Mem.)  The remaining defendants moved to dismiss the complaint on July 22, 2005.  (Doc. 48, Defs.' Mem.)  The parties stipulated to move the date for oral argument on both motions to September 12, 2005.  (Doc. 53, Stipulation, filed July 29, 2005; Doc. 55, Order, filed August 5, 2005).

On July 27, 2005, plaintiffs filed opposition to Dr. ROSTON's motion to dismiss.  (Doc. 49, Pls.' Opp. to Roston)  On August 26, 2005, plaintiffs filed opposition to the remaining defendants' motion to dismiss.  (Doc. 59, Pls.' Opp. to Defs.) Dr. ROSTON filed a reply to plaintiffs' opposition on August 30, 2005.  (Doc. 64, Roston Reply)  The remaining defendants filed a reply on September 6, 2005.  (Doc. 67, Defs.' Reply)

Oral argument was heard on September 12, 2005.  Carolyn D. Phillips, Esq., Catherine Campbell, Esq., and Robert Navarro, Esq., appeared on behalf of plaintiffs, with Mr. Daniels, Esq., specially appearing.  Alvin Gittisriboongul, Esq., appeared on behalf of all defendants except Dr. Ronald Roston.  Susan M. Steward, Esq., appeared on behalf of Dr. Roston.

### III.   SUMMARY OF PLEADINGS

#### A.   Parties.

Khem Singh ("Mr. Singh") was a state prisoner at SATF from October 15, 2001 until his death on February 16, 2004.  Mr. Singh was convicted of child molestation (Cal. Penal Code § 288, lewd or lascivious acts with a child under age 14) and was sentenced to fifteen years to life with possibility of parole.

Mr. Singh was born March 30, 1931, in Punjab Province, India.  He was a life-long practicing Sikh and a priest in the Sikh religion.  Mr. Singh's religious practices prohibited him from eating meat, eggs, or food that was on the same plate as meat.  Mr. Singh's religious practices also included wearing a beard and turban and never cutting his hair.  Mr. Singh's only language was Punjabi and he did not speak, read, or write English.  (AC ¶¶ 26, 28)

At SATF, Mr. Singh was housed in Facility D5, a "sensitive needs unit."  Facility D5 housed inmates who were disabled or required protective custody.  Mr. Singh was assigned to this unit because he was disabled and in a wheelchair because of a deformed left foot, did not speak English, and had been convicted and sentenced for child molestation.

Plaintiff BALJIT KAUR is the widow of Khem Singh.  BALJIT KAUR is a native of Punjab Province, India, and does not speak, read, or write English.  (AC ¶ 6)  Plaintiff HARNOOR KAUR is Mr. Singh's daughter and plaintiff GURIKAT SINGH is Mr. Singh's son. Defendants MANDEEP SINGH and GURMEET KAUR are other children of Mr. Singh, and are named solely as nominal defendants.

**4**

All defendants are sued in both their individual and official capacities for purposes of the § 1983 claims. (*Id.* at ¶ 22)

Plaintiffs name as defendants several supervisory officials of the California Department of Corrections ("CDC"). ED ALAMEIDA, JR. was at all relevant times the Director of the CDC.  SUZAAN STEINBERG is and was at all relevant times the Director of Health Services for the CDC.  WARDEN DARRELL ADAMS was at all relevant times the Warden of SATF.  CAPTAIN J. PRUD'HOMME is and was at all relevant times the Captain of D Facility at SATF.  ACTING CHIEF MEDICAL OFFICER DEERING, M.D., was at all relevant times the head physician at SATF.  ALAMEIDA and STEINBERG were DEERING, CHIEF PSYCHOLOGIST DOE 1, and CHIEF PSYCHIATRIST DOE 2's supervisors.

Plaintiffs also name as defendants several CDC physicians. DRS. VIJAYA, M.D.; GILBERT V. GONZALEZ, M.D.; and HARVEY M. HUANG, M.D., were at all relevant times physicians at SATF. Their supervisor was Dr. DEERING.  Dr. DEERING is also alleged to have personally treated Mr. Singh.

Plaintiffs name several CDC psychologists as defendants, including DAVID UNDERWOOD, RONALD ROSTON, LESLIE KUBERSKI, C. HIRBOUR, and Dr. CASTILLO.[1]  Their supervisors were defendants ALAMEIDA and STEINBERG.  In addition Dr. ROSTON was Mr. Singh's case manager.  Plaintiffs also name psychiatrist NANDAN BHATT.

---

[1] Plaintiffs' complaint contains allegations regarding Dr. CASTILLO, although Dr. CASTILLO is not named as a defendant in the caption.  Plaintiffs asserts the failure to include Dr. CASTILLO's name was an oversight.  Plaintiffs are granted **LEAVE TO AMEND** their complaint add Dr. CASTILLO.

1   Finally, Plaintiffs name several members of the correctional
2   staff at SATF.  E. J. CARRILLO is and was at all relevant times a
3   Correctional Lieutenant at SATF.  PATTERSON, WILSON, WILLIAMS,
4   McKESSON, and HARTFIELD are and were at all relevant times
5   employed as CDC Correctional Officers at SATF.
6
7       **B.   <u>General Allegations Against All Defendants.</u>**
8   Plaintiffs' complaint is divided into two general categories
9   of allegations.  First, plaintiffs' complaint contains general
10  allegations against all defendants, which are described in this
11  section.  Second, plaintiffs complaint contains specific
12  allegations against individual defendants, which are summarized
13  in the next section.  Plaintiffs' counsel stated during oral
14  argument on September 12, 2005 that the individual allegations
15  are based on reports and other documentation available to them at
16  the time the complaint was drafted.
17  Plaintiffs generally allege that from the time of
18  Mr. Singh's incarceration at SATF on October 15, 2001, until his
19  death on February 16, 2004, he did not receive adequate medical
20  or mental heath care.  Plaintiffs allege that, despite Mr.
21  Singh's symptoms of depression and suicidal tendencies,
22  defendants failed to properly examine or treat Mr. Singh.
23  Plaintiffs allege that all correctional staff defendants at SATF
24  were aware the Mr. Singh was demonstrably mentally ill and knew
25  or should have known that he was suicidal.  Despite this, they
26  failed to provide adequate medical care, and their neglect
27  eventually culminated in Mr. Singh's death from a heart attack
28  and self-starvation on February 16, 2004.  (AC ¶¶ 77, 96)

**6**

Plaintiffs also contend that Mr. Singh was harassed, insulted, and beaten by defendants, who were motivated by their bias against Mr. Singh for his religion, ethnicity, and conviction of child molestation.  Plaintiffs allege that the defendants substantially burdened Mr. Singh's exercise of his religious faith by denying him access to his religious texts; denying him a religiously-mandated vegetarian diet and shower before prayers; and by abusing, harassing, and insulting him because of his religious beliefs.  Defendants' conduct resulted in Mr. Singh becoming depressed "because he was unable to practice the faith that sustained him," which eventually led to his death.  (AC ¶ 102)

Plaintiffs' First Amended Complaint contains a chronological account of Mr. Singh's tenure at SATF, from 2001 through the date of his death on February 16, 2004.  The allegations relating to events and mistreatment in 2001 are not always attributed to a named defendant.

On October 24, 2001, Mr. Singh was placed (by unnamed prison employees) in administrative segregation because he had defecated on himself and refused to wash.  Plaintiffs allege such incidents occurred several times.  However, a translator was never provided to Mr. Singh to explain the staffs' actions or the disciplinary process.  (AC ¶ 35)

On November 9, 2001, unidentified prison staff were aware that Mr. Singh was unable to care for himself, would not leave his cell for meals, and was taken to his shower by a volunteer inmate.  An unidentified individual or individuals observed that Mr. Singh needed to be transferred to a medical facility.  (AC

¶ 38)

On November 19, 2001, Mr. Singh was assaulted by his cellmate, inmate McCuff.  Plaintiffs allege that unidentified defendants placed McCuff with Mr. Singh, even though they purportedly knew that inmate McCuff had a history of assaulting other inmates.  (AC ¶ 36)

On December 19, 2001, Mr. Singh was admitted to the Correctional Treatment Facility (CTF) at Corcoran for psychiatric problems, including depression and a refusal to eat.  An unidentified individual conducted a mental health assessment without an interpreter.  This individual or individuals diagnosed Mr. Singh with depression and prescribed a minor tranquilizer. (AC ¶ 39)

On December 20, 2001, Mr. Singh said through an interpreter that he was not suicidal or depressed.  He was not returned to the general population until December 26, 2001.  He initially refused to go, but was told through an interpreter that he had to go.

From December 27 through December 31, 2001, Mr. Singh was placed on suicide watch because he had not eaten.  On December 31, 2001, unidentified individuals notified unidentified custody staff that Mr. Singh had not eaten for four days.  The next event outlined in the complaint took place on January 8, 2002, when Dr. KUBERSKI did not complete a mental health or a suicide assessment of Mr. Singh because there was no translator.  The events alleged to have taken place on and after January 8, 2002 are, for the most part, attributed to individual defendants and are outlined in more detail below.

**C.   Allegations Against Individual Defendants.**

**1.   Psychologist LESLIE KUBERSKI, Ph.D.**

On January 8, 2002, defendant psychologist LESLIE KUBERSKI "did not complete a mental health assessment or conduct a suicide risk assessment of Mr. Singh, because of the lack of a translator."  (AC ¶ 43)  Dr. KUBERSKI did not make arrangements to conduct an assessment with a translator.  Mr. Singh was removed from the mental health program on January 10, 2002. Defendants also allege that KUBERSKI failed to summon adequate medical care.  (AC ¶¶ 140-142)

**2.   Dr. CASTILLO, M.D. and Correctional Officer WILSON.**

On January 25, 2002, defendant Dr. CASTILLO admitted Mr. Singh to CTF.  Mr. Singh had not been eating.  Dr. CASTILLO concluded Mr. Singh was on a hunger strike and suffering from starvation.  Dr. CASTILLO "did nothing to protect Mr. Singh; he did not place him on suicide watch; he did not ask for a complete mental health assessment; he did not invoke hunger strike protocols."  (AC ¶ 45)

Plaintiffs allege that on January 24, 2002, the day before Dr. CASTILLO admitted Mr. Singh to CTF, defendant Correctional Officer WILSON physically assaulted Mr. Singh by forcing him into a shower.  (AC ¶ 44)

**3.   Physician Dr. VIJAYA, M.D.**

Plaintiffs allege Dr. VIJAYA was Mr. Singh's physician.  On February 26, 2002, Dr. VIJAYA is alleged to have discharged

**9**

Mr. Singh from CTF (where he had been since Dr. CASTILLO admitted him on January 25, 2002) and returned him to the yard without any plan for treatment.  (AC ¶ 46)  Mr. Singh had been on a liquid diet while in CTF.  Also, Plaintiffs allege that medical records indicate no one was able to communicate with Mr. Singh while he was in CTF because of lack of a translator.

### 4.   Correctional Officers Sgt. E. J. CARILLO and Sgt. A. PATTERSON.

On March 26, 2002, five correctional officers, supervised by Correctional Officers CARILLO and PATTERSON, forcibly removed Mr. Singh from his cell.  Mr. Singh suffered injury as a result. Plaintiffs allege Mr. Singh's removal was the result of his refusal to leave his cell until resolution of issues regarding the denial of his legal mail, hearings, and visits.  Mr. Singh was told through an interpreter that he was required to leave his cell before these issues were resolved, but the officers assert he was resisting removal and "fighting."  At the time, Mr. Singh weighed less than 110 pounds.  (AC ¶ 48)

Plaintiffs also allege that defendants CARILLO and PATTERSON failed to adequately train and supervise medical, mental health, and correctional staff regarding policies and procedures for the provision of medical and mental health care and suicide prevention.  (AC ¶ 120-121)  Defendants CARILLO and PATTERSON are also alleged to have failed to summon medical care.  (AC ¶¶ 140-142)

//

//

10

**5.   Physician Dr. HARVEY HUANG, M.D. and Other Unnamed Defendants.**

After the removal of Mr. Singh from his cell on March 26, 2002, Mr. Singh as admitted to CTF.  He was put in five-point restraints and placed in an observation cell.  Defendant HUANG examined Mr. Singh without an interpreter.  Defendant HUANG noted that Mr. Singh did not shower, clean his toilet, or remove trash from his cell.  HUANG also noted Mr. Singh was agitated and believed the staff were "after him."  HUANG diagnosed Mr. Singh with paranoid schizophrenia and a delusional disorder. Plaintiffs allege that Dr. HUANG's medical assessment was inadequate because he had no interpreter, did not conduct a psychiatric assessment, and never spoke with Mr. Singh.

During this period (March 26, 2002 through April 3, 2002) at CTF, plaintiffs also allege that a mental health assessment was completed by DOE Defendant 4, without an interpreter.  Mr. Singh is alleged to have been found illogical, argumentative, controlling, paranoid, and having poor insight, judgment, and reality contact.  (AC ¶ 50)  Plaintiffs further allege that unidentified individuals conducted an "interdisciplinary care plan and team review" concluded that Mr. Singh was "anxious with delusional thoughts and reality distortion" and that "all staff were responsible to help Mr. Singh become free of his delusion. (AC ¶ 51)  Plaintiffs allege that nothing was done to follow these recommendations.  (AC ¶ 52)

**6.   Physician Dr. DEERING, M.D.**

On June 17, 2002, Mr. Singh was taken to the emergency room

11

based on a report that he had not eaten in two or three days.
Dr. DEERING is alleged to have verbally ordered Mr. Singh
returned back to his cell.  Plaintiffs allege that Dr. DEERING
issued this order without a translator, and further that he
ordered no follow-up, did no assessment, and did not order a
special diet, despite his awareness that Mr. Singh was ill.  (AC
¶ 53)

On January 4, 2004, Correctional Officer HARTFIELD contacted
medical staff to advise them that Mr. Singh had not eaten for two
weeks.  On January 20, 2004, Mr. Singh refused to leave his cell
for a medical appointment.  Plaintiffs allege Dr. DEERING was
notified of Mr. Singh's refusal to eat, but did nothing in spite
of Mr. Singh's known deterioration.  (AC ¶ 75)

Plaintiffs also allege that Dr. DEERING failed to properly
train medical, psychological and correctional staff regarding
policies and procedures for the provision of medical and mental
health care and suicide prevention.  (AC ¶ 120-124)  Plaintiffs
allege that Dr. DEERING was aware of McKESSON's "psychological
instability and brutality against inmates."  (AC ¶ 84)
Plaintiffs do not allege Dr. DEERING was aware of McKESSON's
brutality against Mr. Singh in particular.

### 7.   Psychologist Dr. RONALD ROSTON, Ph.D.

On October 16, 2002, Mr. Singh requested a mental health
intervention in a letter written in Punjabi.  On November 4,
2002, Dr. ROSTON completed an assessment through an interpreter.
Dr. ROSTON formulated a treatment plan through which Mr. Singh
was to learn to communicate "non-verbally."  Plaintiffs allege

**12**

this plan was never followed.

Plaintiffs allege that Dr. ROSTON also diagnosed Mr. Singh as having chronic depression, an adjustment disorder, and an obsessive-compulsive personality disorder with narcissistic and paranoid characteristics.  Dr. ROSTON noted that Mr. Singh was a vegetarian and needed more grains and vegetables in his diet. Dr. ROSTON recommended that a follow-up exam should be conducted every 90 days.  Plaintiffs allege neither recommendation was ever implemented.  (AC ¶ 54)

On November 20, 2002, Dr. ROSTON "observed Mr. Singh at prayer in his cell and concluded he was 'probably as devout as he claims.'"  Dr. ROSTON also decided that Mr. Singh did not show any of the signs of mental illness he had diagnosed on November 4.  ROSTON then discharged Mr. Singh from mental health treatment.  (AC ¶ 55)

On January 21, 2003, Plaintiffs allege Dr. ROSTON again saw Mr. Singh and "admitted [Mr. Singh] suffered from mild depression" due to Mr. Singh's problems getting vegetarian food and showering before prayers.  (AC ¶ 58)


### 8.   Correctional Officer S. WILLIAMS.

On April 20, 2003, Correctional Officer WILLIAMS grabbed a makeshift turban off of Mr. Singh's head and threw it away. WILLIAMS also complained that Mr. Singh held up the food line whenever he would ask for meat to be removed from his food tray. (AC ¶ 62)


### 9.   Correctional Officers McKESSON and HARTFIELD.

On September 7, 2003, Officer McKESSON gave Mr. Singh an unsatisfactory work performance evaluation.   Plaintiffs allege that McKESSON gave Mr. Singh an unsatisfactory evaluation based on his conviction, his religion, his ethnic identity, and McKESSON's belief Mr. Singh was associated with Islamic terrorism.   (AC ¶ 63)

Plaintiffs also allege that McKESSON often interfered with Mr. Singh's efforts to be served only vegetables at meal times. (AC ¶ 34)

On October 29, 2003, McKESSON, along with defendant HARTFIELD, put inmate Grecu in Mr. Singh's cell.   Inmate Grecu had a history of in-custody assaults.   Inmate Grecu beat Mr. Singh.   (AC ¶ 66)   Plaintiffs allege McKESSON's actions were motivated by his biases against Mr. Singh.

Sometime in October, 2003, when Mr. Singh's family came to visit him, McKESSON falsely told the prison's visiting staff that Mr. Singh had refused the visit from his family.   (AC ¶ 67)

On December 9, 2003, defendant McKESSON wilfully slammed Mr. Singh's hand in the cell door and told defendant HARTFILED not to allow Mr. Singh any medical care for the injury.   After that date, plaintiffs allege Mr. Singh never left his cell, stopped eating, and steadily lost weight.   (AC ¶ 71)

After September 11, 2001, plaintiffs alleged that Mr. Singh was repeatedly and increasingly abused, threatened, and insulted by defendants McKESSON and HARTFIELD.   (AC ¶ 78)   Plaintiffs alleged McKESSON engaged in the following harassment of Mr. Singh:   (a) berating Mr. Singh and locking him in his cell as punishment for Mr. Singh's failure to perform his duties as

**14**

porter because of his language and physical barriers; (b) calling Mr. Singh a "Taliban," "Bin Laden," and "rag head"; (c) telling Mr. Singh to take the towel off his head; (d) telling ADA inmate helpers not to give assistance to Mr. Singh; (e) telling ADA inmate helpers to fabricate records of having assisted Mr. Singh; (f) hitting Mr. Singh on the head; (g) throwing Mr. Singh on the ground of his cell after an earthquake; (h) pushing Mr. Singh back into his cell; (i) tearing up Mr. Singh's religious altar; (j) ripping the turban (a sheet) off Mr. Singh's head and forcing him to sign a trust account withdrawal to pay for the torn sheet; (k) taunting Mr. Singh by asking him to come out of his cell and then slamming the door before he could get out; (l) participating in systematic brutality as part of a group of SATF officers called "The Green Wall."  (AC ¶¶ 79-81, 85)

Defendant HARTFIELD, a control booth officer, is alleged to have frequently refused to allow Mr. Singh to leave his cell to eat, go to the yard to sit in the shade, or leave his cell to use the telephone.  (AC ¶ 83)


### 10. Psychologist C. HIRBOUR, Ph.D.

On November 13, 2003, defendant HIRBOUR, a psychologist, saw Mr. Singh in his cell.  HIRBOUR "found Mr. Singh 'praying and gesturing wildly,' but could not evaluate him absent an interpreter and recommended he be seen by a physician in a week." (AC ¶ 68)  Plaintiffs allege that HIRBOUR erroneously concluded that Mr. Singh did not have mental health issues.

On December 2, 2003, HIRBOUR once again saw Mr. Singh. Plaintiffs allege Mr. Singh was visibly thin, withdrawn, and had

not been eating.  HIRBOUR nevertheless recommended that Mr. Singh
be discharged to the general population "when applicable."  (AC
¶ 70)

### 11.  Defendant Psychologist UNDERWOOD, Ph.D.

On December 22, 2003, defendant UNDERWOOD went to Mr.
Singh's cell to conduct a mental health assessment.  Defendant
HARTFIELD had requested psychiatric intervention because
Mr. Singh had not eaten or showered for 30 days.  (AC ¶ 73)

### 12.  Defendant Psychiatrist BHATT, M.D.

In December 2003, plaintiffs allege that defendant BHATT
denied medical care to Mr. Singh when BHATT refused to see
Mr. Singh unless he came to the clinic.  (AC ¶ 73)  Plaintiffs
allege BHATT failed to summon medical care for Mr. Singh.  (AC
¶¶ 140-142)

### 13.  Defendant GONZALEZ, M.D.

On January 20, 2004, defendant GONZALEZ, the yard doctor,
was notified of Mr. Singh's refusal to leave his cell for an
appointment, but did nothing in spite of Mr. Singh's known
deterioration.  (AC ¶ 75)  Plaintiffs allege that GONZALEZ failed
to summon medical care.  (AC ¶¶ 140-141)

### 14.  Defendants ED ALAMEIDA, SUZAAN STEINBERG, DARREL ADAMS, and PRUD'HOMME.

Plaintiffs allege that as Director of the CDC during times
relevant to this action, defendant ALAMEIDA was responsible for

**16**

1  the CDC's policies, practices, and procedures as well as the
2  conduct of CDC employees.  (AC ¶ 9)

3      Plaintiffs allege that as Director of the CDC's Health
4  Services, defendant STEINBERG was responsible for CDC's health
5  care policies, practices, and procedures and the conduct of CDC's
6  medical staff.  (AC ¶ 10)

7      Plaintiffs allege that as Warden of SATF, defendant ADAMS
8  was responsible for SATF's policies, practices, and procedures as
9  well as the conduct of SATF employees.  (AC ¶ 11)  Plaintiffs
10 allege that ADAMS was aware of defendant McKESSON's
11 "psychological instability and brutality against inmates," and
12 that inmates filed numerous appeals alleging brutality, insults,
13 and endangering conduct by McKESSON.  (AC ¶ 84)

14     Plaintiffs allege that defendant PRUD'HOMME, as the
15 supervisor in charge of Facility D, had the authority and
16 responsibility to ensure that Mr. Singh received access to
17 adequate medical and mental health care.  (AC ¶ 97)

18     Plaintiffs allege that "[a] January 2003 Management Review
19 Audit by the Office of the Inspector General, which September 23,
20 2005 detailed serious, systemic failures in the delivery of
21 medical and mental health care to SATF prisoners, placed these
22 defendants[2] on notice of said failures...."  (AC ¶ 97)
23 //
24 //
25 //

26 _____

27     [2] Defendants listed in ¶ 97 are:  ADAMS, PRUD'HOMME,
   DEERING, Chief Psychologist (Doe 1), Chief Psychiatrist (Doe 2),
28 CARILLO, PATTERSON, and Does 3 through 26.

17

1

2

### IV.   LEGAL STANDARD

     Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted:   "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).   In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

     "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.   Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).   For example, matters of public record may be considered under Fed. R. Civ. P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**18**

"Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted." *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002). There is no requirement, however, that affirmative defenses, including statutes of limitation, appear on the face of the complaint. *Hyatt Chalet Motels, Inc. v. Carpenters Local 1065*, 430 F.2d 1119, 1120 (9th Cir. 1970). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (1980); *see also TwoRivers*, 174 F.3d at 991.

## V.   ANALYSIS

### A.   Statute of Limitations for Plaintiffs' Federal Claims.

#### 1.   Whether Plaintiffs' Federal Claims Against Certain Defendants Are Time-Barred.

Defendants argue that plaintiffs' federal claims for against defendants KUBERSKI, CASTILLO, VIJAYA, and ROSTON are time-barred.

The parties agree that applicable statute of limitations for claims brought under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, and the American Disabilities Act ("ADA") is the forum state's statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001); *see*

19

*also Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002).  California's statute of limitations for personal injuries under Cal. Civ. Proc. § 335.1 therefore apply here.

Until January 1, 2003, the statute of limitations in California was one year.  *Knox*, 260 F.3d at 1014.  Effective January 1, 2003, personal injury actions in California became subject to a two-year statute of limitations period pursuant to section 335.1 of the California Code of Civil Procedure.  The Ninth Circuit Court of Appeals has held that the two-year limitation period does not apply retroactively to causes of action accruing before the effective date of § 335.1.  *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004).

State law also governs the tolling of a limitations period. *Martinez v. Gomez*, 137 F.3d 1124, 1125 (9th Cir. 1998).  Cal. Civ. Proc. Code § 352.1(a) tolls the limitations period for actions brought by an individual who is serving a criminal sentence "for a term less than life."  The limitations period may be tolled for up to two years.  *Id*.  Because Mr. Singh was a prisoner serving a term sentence, § 352.1(a) applies to toll the limitations period for two years for claims brought on his behalf.

The limitations period for the § 1983, Rehabilitation Act, and ADA claims brought on Mr. Singh's behalf accruing before January 1, 2003 is three (3) years.  The complaint was filed on March 15, 2005.  Therefore, claims accruing before March 15, 2002, were filed outside of the statutory period and are time-

**20**

barred.[3]

"Although state law prescribes the statute of limitations applicable to section 1983 claims, federal law governs the time of accrual." *Gibson v. United States*, 781 F.2d 1334, 1339 (9th Cir. 1986). "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (internal quotations omitted).

Plaintiffs allege incidents on particular dates as to KUBERSKI, CASTILLO, VIJAYA, and ROSTON. All of these dates are in 2002. Each claim brought on behalf of Mr. Singh for the injuries suffered by him accrued when Mr. Singh knew or should have known of the injury that was the basis of his action.[4] As stated above, the claims accruing before March 15, 2002 are time-barred.

As an initial matter, all of the individual allegations against Dr. ROSTON are alleged to have occurred after March 15, 2002 and are therefore not time-barred. Dr. ROSTON's motion to dismiss plaintiffs' federal claims on statute of limitations grounds is **DENIED**.

The analysis as to KUBERSKI, CASTILLO, and VIJAYA is

---

[3] The limitations period for claims accruing after January 1, 2003 is four (4) years. The statutory period for claims accruing after January 1, 2003 has not yet expired and is not in issue.

[4] Claims brought on Mr. Singh's behalf are distinguished from the claims brought on behalf of the living plaintiffs for their injury, which is the loss of their family member and accrues on the day of Mr. Singh's death.

slightly different.  Plaintiffs allege that on January 8, 2002,
KUBERSKI failed to adequately assess Mr. Singh's condition; on
January 25, 2002, CASTILLO admitted Mr. Singh to CTF, determined
he was suffering from starvation, but did not thing to protect
Mr. Singh; on February 26, 2002, VIJAYA discharged Mr. Singh from
CTF without any treatment or plan for future treatment.  All of
these events occurred before March 15, 2002, and therefore fall
outside the statutory period.  The federal claims against
KUBERSKI, CASTILLO, and VIJAYA based on these events (as well as
all other claims based on events accruing before March 15, 2002)
are barred by the statute of limitations to the extent the
limitations period is not tolled.

     As discussed below, however, it is not clear from
plaintiffs' allegations that equitable tolling and/or tolling
under Cal. Civ. Proc. Code § 352(a) on insanity grounds would not
apply here.  Defendants' motion to dismiss the federal claims
against KUBERSKI, CASTILLO, and VIJAYA on statute of limitations
grounds is **DENIED WITHOUT PREJUDICE.**


### 2.   Whether the Statute of Limitations for Claims Accruing Before March 15, 2002 Is Tolled.

     "When a motion to dismiss is based on the running of the
statute of limitations, it can be granted only if the assertions
of the complaint, read with the required liberality, would not
permit the plaintiff to prove that the statute was tolled."
*Jablon*, 614 F.2d at 682; *see also TwoRivers*, 174 F.3d at 991.  If
plaintiffs' allegations, taken as true, are sufficient to permit
tolling, then defendants' motion to dismiss on statute of

1  limitations grounds must be denied.

2       Plaintiffs argue that the statute of limitations should be

3  tolled based on two alternate legal grounds.  First, plaintiffs

4  argue that the statute should be tolled pursuant to Cal. Civ.

5  Proc. Code § 352(a), which acts to toll the limitations periods

6  during the time of the claimant's disability, including insanity.

7  Second, plaintiffs argue that equitable tolling should apply to

8  toll the statute.

9       Cal. Civ. Proc. Code § 352(a) provides that "[i]f a person

10  entitled to bring an action is...at the time the cause of action

11  accrued...insane, the time of disability is not part of the time

12  limited for the commencement of the action."  The inquiry to

13  determine whether a person is insane under § 352(a) is whether

14  the person is sufficiently aware of the nature or effects of his

15  acts to be able to comprehend such business transactions as the

16  hiring of an attorney and the instigation of a legal action.  *Hsu*

17  *v. Mt. Zion Hosp.*, 259 Cal. App. 2d 562, 574 (1968); *Feeley v.*

18  *S. Pac. Transp. Co.*, 234 Cal. App. 3d 949, 952 (1991).  Actual

19  psychiatric illness is not required.  *Id.*

20       Equitable tolling allows a court to suspend the running of

21  the statute when the balance of equities favors the plaintiff.

22  *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003).  The purpose

23  of equitable tolling is "to prevent the unjust technical

24  forfeiture of causes of action, where the defendant would suffer

25  no prejudice."  *Id.*  A court may apply equitable tolling when the

26  injustice to plaintiff outweighs the possibility of prejudice to

27  the defendant.  *See id.* at 371.

28       Reading plaintiffs' allegations with the required

23

liberality, it is not clear that Cal. Civ. Proc. Code § 352(a) or equitable tolling do not apply.  Plaintiffs allege that when Mr. Singh was incarcerated in August 2001, he was healthy and well-adjusted.  However, within a week of being placed at SATF in October 2001, Mr. Singh "was defecating on himself and refusing to wash."  Mr. Singh is alleged to have had ongoing problems with depression, hygiene, and refusal to eat, from October 2001 until his death in February 2004.  While defendants distinguish some of the cases cited by plaintiffs, they offer no persuasive argument as to how any purported prejudice they would suffer would outweigh the injustice to plaintiffs if they were precluded from bringing these claims.  Taken as true, it is not clear from plaintiffs' allegations that Mr. Singh was capable of understanding his affairs or of understanding complicated business transactions such as hiring an attorney or bringing a lawsuit.

The allegations, if proved, are sufficient to support tolling of the statute of limitations for claims brought on Mr. Singh's behalf commencing October 2001.  However, whether the statute was actually tolled is a fact-based inquiry, more appropriately decided at the fact-finding stages of the litigation.  Defendants' motions to dismiss plaintiffs' federal claims on statute of limitations grounds are **DENIED WITHOUT PREJUDICE.**

### 3.   Continuing Violations Doctrine.

Plaintiffs argue that claims based on events occurring before March 15, 2002 are not time-barred because they are

1  actionable as continuing violations.  The continuing violations

2  doctrine can preserve claims that are related to allegations

3  falling outside a limitations period.  The continuing violations

4  doctrine has been applied in § 1983 actions.  *See RK Ventures,*

5  *Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002);

6  *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*,

7  344 F.3d 822 (9th Cir. 2003); *Thompson v. City of Shasta Lake*,

8  314 F. Supp. 2d 1017, 1027 (E.D. Cal. 2004).  The doctrine has

9  also been applied to claims arising under other civil rights laws

10 such as the Rehabilitation Act and the ADA.  *See Cherosky v.*

11 *Hendrson*, 330 F.3d 1243, 1246 (9th Cir. 2003); *Douglas v. Cal.*

12 *Dept. of Youth Authority*, 271 F.3d 812 (9th Cir. 2001).

13     Before the United States Supreme Court addressed the

14 continuing violations doctrine in  *Nat'l R.R. Corp. v. Morgan*,

15 536 U.S. 101 (2002), there were two ways to establish a

16 continuing violation.  *See Carpinteria*, 344 F.3d at 828; Douglas,

17 271 F.3d at 822 (in a case decided before *Morgan*, Ninth Circuit

18 notes that it "ha[s] recognized two methods by which a plaintiff

19 may establish a continuing violation" (citing *Gutowski v. County*

20 *of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)).  First, the

21 "related acts" theory holds that discriminatory acts that fall

22 outside the statutory period, but are "related and similar to"

23 acts within the statutory period is actionable.  *See id*.  Second,

24 the "continuing policy" theory holds that a continuing policy or

25 practice of discrimination that operated at least in part within

26 the limitations period is actionable.  *See id*.

27     However, as the Ninth Circuit noted recently, the United

28 States Supreme Court in *Morgan*, 536 U.S. 101, overruled the

"related acts" test:

> *Morgan* overruled previous Ninth Circuit authority
> holding that, if a discriminatory act was "related and
> similar to" acts that took place outside the
> limitations period, all the related acts--including the
> earlier acts--were actionable as part of a continuing
> violation.  [citation]  *Morgan* held that "discrete
> discriminatory acts are not actionable if time barred,
> even when they are related to acts alleged in timely
> filed charges."

*RK Ventures*, 307 F.3d at 1061 (quoting *Morgan*, 122 S.Ct. at

2072); *see also Carpinteria*, 344 F.3d at 828 (noting that the

Supreme Court in *Morgan* invalidated the "related acts" method of

establishing a continuing violation...."").

The claims accruing before March 15, 2002 cannot be saved

under the related acts theory of the continuing violations

doctrine, as this theory has been overruled and is no longer the

law.


**4.  Conclusion.**

Defendants' motions to dismiss plaintiffs' federal claims on

statute of limitations grounds are **DENIED WITHOUT PREJUDICE** on

the basis that it is not determinable from plaintiffs'

allegations that the statute of limitations would not be

equitably tolled and/or tolled under Cal. Civ. Proc. Code

§ 352(a) on insanity (lack of mental capacity) grounds.


**B.   Defendants' Arguments Regarding Causation.**

Defendants distinguish between the claims brought on behalf

of Mr. Singh for the injuries he suffered during his lifetime and

the claims brought on behalf of Mr. Singh's wife and children for

their injury, i.e., the loss they suffered due to Mr. Singh's

death.  Defendants argue that the claims that are brought by
plaintiffs on their own behalf, and that are based on Mr. Singh's
death, should be dismissed as to those defendants who cannot, as
a matter of law, be causally linked to Mr. Singh's death.
Specifically, defendants argue that plaintiffs cannot establish
causation of Mr. Singh's death as to KUBERSKI, CASTILLO, and
VIJAYA.

Plaintiffs' specific allegations against these three
individual defendants are that they failed to adequately treat or
assess Mr. Singh's medical and mental health conditions on
particular occasions.  Defendants argue that "it would stretch
one's imagination and logic to assert that these individual
defendants' remote, insular and discrete interactions with
decdent were actual or legal causes of decedent's death."  (Doc.
67, Defs.' Reply 7)  Defendants cite *Van Ort v. Estate of
Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996), to support their
argument that, while causation is usually a question of fact for
the jury to decide, causation can be resolved as a matter of law
when reasonable persons could not dispute the absence of
causation.  Defendants' argument is not persuasive.  *Van Ort* was
an appeal from the district court's granting of a judgment as a
matter of law.  Defendants cite no cases in which the court
decided the causation issue at the pleading stage.  This issue is
not appropriately decided on a motion to dismiss.

Furthermore, plaintiffs' allegations relating to these three
individual defendants are not limited to the specific allegations
of events occurring on particular dates.  As plaintiffs' counsel
stated during oral argument, plaintiffs' complaint contains

specific allegations as to individual defendants based upon

medical and other records collected to date.  Plaintiffs'

complaint also contains general allegations that relate to all of

the defendants, including allegations of ongoing conduct that

eventually led to Mr. Singh's death.  On defendants' narrow

interpretation of the complaint, no one would be responsible for

Mr. Singh's death because no individual defendant is alleged to

have struck the fatal blow.

Defendants' motions to dismiss on causation grounds are

**DENIED.**

### C.   **First Cause of Action (§ 1983 Claim for Failure to Provide Adequate Medical Care).**

Defendants argue that plaintiffs' first claim for relief

fails to state a claim against defendants CARILLO, PATTERSON,

WILLIAMS, and HARTFIELD, who were correctional staff at SATF, and

also that plaintiffs fail to state a claim against ROSTON.

Plaintiffs' first claim for relief is brought under § 1983 on the

basis that defendants, individually and collectively, violated

Mr. Singh's 8th and 14th Amendment rights by failing to provide

adequate medical care.

The Eighth Amendment's prohibition against "cruel and

unusual punishments" places duties on prison officials to provide

humane conditions of confinement, including "ensur[ing] that

inmates receive adequate food, shelter, clothing, and medical

care...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In the

medical context, a prison official violates an inmate's Eight

Amendment rights if he exhibits a deliberate indifference to the

28

1  inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97,

2  104 (1976); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Mere

3  negligence is not sufficient.  *Gamble*, 429 U.S. at 105-06; *see*

4  *Seiter*, 501 U.S. at 305.  The test is whether prison officials,

5  acting with deliberate indifference, exposed a prisoner to a

6  sufficiently substantial "risk of serious danger to his future

7  health."  *Farmer*, 511 U.S. at 843.

8      Plaintiffs' individual allegations against CARILLO,

9  PATTERSON, WILLIAMS, and HARTFIELD, who are all correctional

10  officers, relate to incidents of alleged harassment, abuse, and

11  assault that occurred on particular dates.[5]  The individual

12  allegations against these defendants do not necessarily relate to

13  Mr. Singh's medical care.  The individual allegations against

14  ROSTON also relate to incidents that occurred on particular

15  dates, although these allegations do relate to Mr. Singh's

16  medical care.[6]

17  _____

18      [5] The individual allegations against the four correctional
officers are as follows.  On March 26, 2002, CARILLO and
19  PATTERSON are alleged to have supervised five (5) correctional
officers forcibly remove Mr. Singh from his cell after he refused
20  to exit.  On October 29, 2003, HARTFIELD is alleged to have had a
role in assigning to Mr. Singh's cell an inmate who had a history
21  of assaulting other inmates.  Mr. Singh was later attacked by
this inmate.  On April 20, 2003, WILLIAMS grabbed a makeshift
22  turban off of Mr. Singh's head and threw it away.  WILLIAMS also
complained that Mr. Singh held up the food line whenever he would
23  ask for meat to be removed from his food tray.  (AC ¶ 62)

24
      [6] The allegations against ROSTON are generally that,
25  approximately two weeks after diagnosing Mr. Singh with
depression and other psychological disorders, he decided that Mr.
26  Singh was not suffering from any mental illness.  ROSTON, a
psychologist, conducted an assessment of Mr. Singh on November 4,
27  2002.  ROSTON diagnosed Mr. Singh with depression, an adjustment
disorder, and an obsessive-compulsive personality disorder.
28

1   Defendants argue that the individual allegations are
2  insufficient to state inadequate medical care claims against
3  them.  However, plaintiffs' complaint contains general
4  allegations against all defendants relating to inadequate medical
5  care.  All that is necessary to state a claim for inadequate
6  medical care under the Eighth Amendment is that the prison
7  official exhibited deliberate indifference to the inmate's
8  serious medical needs.  *Estelle*, 429, U.S. at 104; *Seiter*, 501
9  U.S. at 303-04.

10   The facts alleged here, if proven, are sufficient to
11  establish that the defendants acted with deliberate indifference
12  to Mr. Singh's serious medical needs in violation of the Eighth
13  Amendment.  Mr. Singh was starving himself, refusing to attend
14  meals, and refusing to wash.  He became emaciated.  Plaintiffs
15  allege that *all* defendants were aware of these behaviors and
16  symptoms but did nothing.  Eventually, Mr. Singh died.  Whether
17  each individual defendant actually acted with deliberate
18  indifference to Mr. Singh's medical needs is a question for the
19  fact-finder and is not appropriately decided on a motion to
20  dismiss.  On a motion to dismiss, all the plaintiff's allegations
21  are taken as true.  Here, plaintiffs' allegations are sufficient
22

23  ROSTON recommended follow-up every 90 days, as well as a
   vegetarian diet.  On November 20, 2002, ROSTON "observed
24  Mr. Singh at prayer in his cell and concluded he was 'probably as
   devout as he claims.'"  ROSTON also decided that Mr. Singh did
25  not show any of the signs of mental illness he had diagnosed on
   November 4.  ROSTON then discharged Mr. Singh from mental health
26  treatment.  (AC ¶ 55)  Approximately two months later, on January
   21, 2003, ROSTON again saw Mr. Singh and "admitted [Mr. Singh]
27  suffered from mild depression" due to Mr. Singh's problems
   getting vegetarian food and showering before prayers.  (AC ¶ 58)
28

to state an Eighth Amendment claim for inadequate medical care.
Defendants' motions to dismiss plaintiffs' Eighth Amendment claim
for inadequate medical care (First Cause of Action) are **DENIED**.[7]

### D.   Second Cause of Action (§ 1983 Claim for Violation of First Amendment Freedom of Religion).

Plaintiffs assert that defendants violated Mr. Singh's First
Amendment rights by, among other things, denying him a vegetarian
diet; denying him access to his religious texts; denying him
access to showers before prayers; and abusing him because of his
religious beliefs.  (AC ¶ 12)  Drs. VIJAYA, BHATT, DEERING,
HUANG, KUBERSKI, UNDERWOOD, GONZALEZ, and ROSTON are physicians,
psychologists, and psychiatrists who treated Mr. Singh and are
referred to as the "medical defendants" by the parties.
Defendants argue that the First Amendment claim should be
dismissed as to the medical defendants because the allegations
regarding the individual medical defendants relate to the
adequacy of the medical care received by Mr. Singh and do not

_____

[7] Defendants argue that plaintiffs' claim under the
Fourteenth Amendment for inadequate medical care should be
dismissed because it is subsumed by its claim under the Eighth
Amendment.  Defendants' argument is rhetorical and irrelevant to
the main issue of whether plaintiffs actually state a claim for
inadequate medical care.  Defendants cite no cases dismissing a
Fourteenth Amendment inadequate medical care claim as being
subsumed by a claim under the Eighth Amendment.  The standards of
care under the Fourteenth Amendment are at least as great as
those under the Eighth Amendment.  *See Davis v. County of Nassau*,
355 F. Supp. 2d 668, 674 (E.D.N.Y. 2005) (citing City of *Revere
v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *see also Jones v.
Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).  Because the
standards are the same, it is unnecessary to determine which
amendment applies.

1  relate to any effort to thwart Mr. Singh's religious practices.

2  Plaintiffs argue, once again, that their allegations against *all*

3  defendants are sufficient to state a claim for violation of

4  Mr. Singh's First Amendment right to freedom of religion.

5      Prisoners do not relinquish their First Amendment rights

6  upon entering prison.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342,

7  348 (1987).  "Inmates clearly retain protections afforded by the

8  First Amendment [citation], including its directive that no law

9  shall prohibit the free exercise of religion."  *Id*.  However,

10  prisons may restrict prisoners' constitutional rights as long as

11  the restrictions are reasonably related to legitimate penological

12  interests.  *Id*.; *Young v. Lane*, 922 F.2d 370, 374 (7th Cir.

13  1991).

14      Defendants do not argue that plaintiffs' factual allegations

15  are insufficient to support a free exercise claim.  Instead,

16  defendants argue plaintiffs fail to allege facts supporting that

17  the acts or omissions of the individual medical defendants caused

18  the alleged deprivation of Mr. Singh's First Amendment right to

19  freedom of religion.  Defendants' argument is once again based

20  upon their attempted distinction between the individual

21  allegations against particular defendants and the general

22  allegations against all defendants.  Defendants' argument is not

23  persuasive.

24      Plaintiffs allege generally that all defendants denied

25  Mr. Singh a vegetarian diet; denied him access to his religious

26  texts; denied him access to showers before prayers; and abused

27  him because of his religious beliefs.  (AC ¶ 102)  Plaintiffs

28  also allege specifically that Dr. ROSTON was aware of Mr. Singh's

**32**

vegetarianism and had the authority to recommend a diet change and did recommend such a change, although his recommendation was never implemented.  (AC ¶ 54)  The allegation of denial of a vegetarian diet extends to the other medical defendants as well. (AC ¶¶ 101-03)  It is not appropriate on a motion to dismiss a complaint that alleges all defendants acted to infringe First Amendment rights, to decide which individual defendants actually restricted Mr. Singh's religious practices in these ways and if so, whether these restrictions were reasonably related to the prison's penological interests.  Defendants' motions to dismiss plaintiffs' First Amendment free exercise claim (Second Cause of Action) are **DENIED**.

**E.**    **Third Cause of Action (§ 1983 Claim for Violation of 14th Amendment Equal Protection Clause).**

Defendants argue plaintiffs fail to state a claim against the medical defendants (i.e., VIJAYA, BHATT, DEERING, HUANG, KUBERSKI, UNDERWOOD, GONZALEZ, and ROSTON) for violation of the Fourteenth Amendment's Equal Protection Clause.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must [allege] that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).  Plaintiffs allege that all defendants violated Mr. Singh's right to equal protection under the law by intentionally discriminating against him based on his race and national origin.  (AC ¶ 104-105)  Plaintiffs

33

specifically allege that the medical defendants failed to provide
Mr. Singh proper medical care, mistreated him, and/or ignored him
because of his race and nationality.  (AC ¶ 31)  Defendants argue
that plaintiffs' allegations against the medical defendants
pertain to the quality of the medical care rendered by them.
Defendants argue plaintiffs fail to state an equal protection
claim because they fail to allege facts that show defendants
intentionally provided inadequate medical care to Mr. Singh
because of his race and/or nationality.

Plaintiffs' Equal Protection claim is averred generally.
This is all that is required by Rules 8(a) and 9(b) of the
Federal Rules of Civil Procedure.  Defendants' motions to dismiss
plaintiffs' equal protection claim (Third Cause of Action) are
**DENIED.**

**F.  Fourth and Fifth Causes of Action (Violation of the Americans with Disabilities Act of 1990 & Violation of Section 504 of the Rehabilitation Act of 1973).**

Defendants argue there is no private right of action against
individual defendants under either the ADA or the Rehabilitation
Act.  Defendants argue that these claims should be dismissed
against all defendants to the extent they are sued in their
individual capacities.  In their opposition, plaintiffs
mischaracterize defendants' argument, stating that defendants
argue there is no private right of action under the ADA or the
Rehabilitation Act.  Plaintiffs cite no authority to oppose
defendants' argument that no ADA or Rehabilitation Act claim can
be brought against individual employees of a public entity.
During oral argument, plaintiffs conceded that there is no such

34

individual liability under the ADA or the Rehabilitation Act.

Defendants are correct that actions under the ADA and Section 504 of the Rehabilitation Act cannot be maintained against individual actors. *Alsbrook v. Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (no individual liability under ADA), *cert. granted in part sub nom.*, *Alsbrook v. Arkansas*, 528 U.S. 1146, *cert. dismissed*, 529 U.S. 1001; *Walker v. Snyder*, 213 F.3d 344 (9th Cir. 2000) (no individual liability under ADA), *implicit overruling on other grounds recognized by Radaszewiski ex. rel. Radaszewiski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004); *Thomas v. Nakatani*, 128 F. Supp. 2d 684, 692 (D. Haw. 2000) (no individual liability under ADA); *Gary v. Georgia Dept. of Human Res.*, 323 F. Supp. 2d 1368, 1371 (M.D. Ga. 2004) (no individual liability under ADA); *Frederick L. v. Dep't of Public Welfare*, 157 F. Supp. 2d 509, 531 (citing cases); *Valder v. City of Grand Forks*, 217 F.R.D. 491, 494 (D.N.D. 2003) (no individual liability under either ADA or Rehabilitation Act); *but see Guckenberger. v. Boston Univ.*, 957 F. Supp. 306, 323 (D. Mass. 1997) (individual who has authority to accept or reject federal funds can be liable under Rehabilitation Act) (citing *U.S. Dept. of Transp. v. Paralyzed Veterans of Amer.*, 477 U.S. 597, 605-606 (1986)).

Defendants' motions to dismiss plaintiffs' ADA and Rehabilitation Act claims (Fourth and Fifth Causes of Action) against all defendants are **GRANTED**.[8]

---

[8] Neither party raises the issue whether supervisory officials can be sued in their official capacities for injunctive relief under the ADA and the Rehabilitation Act. Neither party cites *Miranda v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003), a Ninth Circuit case holding that officials can be sued

### G.   **Sixth Cause of Action (§ 1983 Violation for Failure to Train, Supervise, and Discipline).**

Defendants argue that plaintiffs fail to state an official capacity § 1983 claim against defendants ALAMEIDA, STEINBERG, and ADAMS.[9]  Plaintiffs concede that, to the extent official capacity claims are alleged against these defendants, they are barred by the Eleventh Amendment.

Defendants also argue that plaintiffs fail to state individual capacity § 1983 claims against defendants ALAMEIDA, STEINBERG, ADAMS, PRUD'HOMME, CARILLO, PATTERSON, and ROSTON for failure to adequately train, supervise, and discipline their subordinates.  Defendants argue that plaintiffs attempt to impose liability on these officials based solely on their role as supervisors.  Plaintiffs deny that their allegations relate only to these defendants' official duties, and assert that the allegations relate to the supervisory defendants' individual knowledge of Mr. Singh's situation and are therefore sufficient to state individual capacity claims against them.

Liability may be imposed against an official in his individual capacity under § 1983 for failure to adequately train, supervise, or discipline.  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Individual liability "is imposed

_____

for injunctive relief under the ADA and the Rehabilitation Act in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908); *see also Radaszewski*, 383 F.3d at 606.  Plaintiffs do not seek injunctive relief in their complaint.

   [9] ROSTON is not named in the Sixth Claim.  Plaintiffs contend this was inadvertent omission.  Plaintiffs are granted **LEAVE TO AMEND** to add Dr. ROSTON to the Sixth Claim.

against a supervisory official...for his own culpable action or inaction in the training, supervision, or control of his subordinates...." *Larez*, 946 F.2d at 646 (internal quotations and citations omitted); *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998); *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002) ("[A] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").

Plaintiffs' complaint contains general allegations regarding the responsibilities and duties of the supervisory defendants, including Dr. ROSTON.  (AC ¶¶ 8-12, 14, 17-19)  Plaintiffs also cite the January 2003 Management Review Audit by the Office of the Inspector General, which detailed systemic failures in the delivery of medical and mental health care to SATF prisoners. However, these general allegations are insufficient to state individual capacity claims against the supervisory defendants as to the injuries suffered by Mr. Singh.  Defendant is correct that, to state an individual capacity § 1983 claim based on supervisory liability, a plaintiff must allege facts that support individual involvement in the alleged deprivations of constitutional rights, or at least a sufficient causal connection between the supervisor's conduct and the alleged deprivation.

Plaintiffs' complaint does contain several factual allegations that support individual knowledge and involvement of some (although not all) of the supervisory defendants in the alleged deprivations of Mr. Singh's rights.  Plaintiffs allege

**37**

that defendant ADAMS was aware of complaints regarding McKESSON, who is alleged to have repeatedly brutalized Mr. Singh.  (AC ¶ 84)  Plaintiffs also allege that PATTERSON and CARILLO were supervising five correctional officers who forcibly removed Mr. Singh from his cell, injuring him.  (AC ¶ 48)  These factual allegations are sufficient to state a claim for supervisory liability against ADAMS, PATTERSON, and CARILLO.  *See Harris v. Roderick*, 12 F.3d 1189, 1204 (9th Cir. 1997).  Plaintiffs also indicated during oral argument that they alleged that other inmates wrote letters to correctional officials trying to bring to their attention that there was an inmate at SATF (i.e., Mr. Singh) who was not eating and was dying.  However, this allegation is not sufficient to state a § 1983 claim against a supervisor, since no supervisor was identified.

Beyond these few specific allegations against ADAMS, PATTERSON, and CARILLO, however, plaintiffs identified no allegations or paragraphs in their complaint that support the personal involvement of the supervisory officials in the deprivation of Mr. Singh's constitutional rights.  Defendants' motion to dismiss plaintiffs' individual capacity claims against ADAMS, PATTERSON, and CARILLO for supervisory liability is **DENIED**.  Defendants' motions to dismiss plaintiffs' individual capacity claims against the remaining supervisory officials (Sixth Cause of Action) is **GRANTED** with **LEAVE TO AMEND**.

H.  **Seventh Cause of Action (Title VI of the Civil Rights Act of 1964, 52 U.S.C. § 2000d, *et seq*.).**

Defendants argue that plaintiffs' Title VI claim should be

38

dismissed because such a claim cannot be sustained against individual defendants.  As with the ADA and Rehabilitation Act claims, plaintiffs again misinterpret defendants' argument, responding that a private right of action is available under Title VI.  Defendants do not argue that no private right of action is available.

Defendants cite several cases holding that no Title VI action can be maintained against an individual defendant. *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996); *Powers v. CSX Transp., Inc.*, 105 F. Supp. 2d 1295, 1311 (S.D. Ala. 2000).  Plaintiffs cite no authority to the contrary, although during oral argument they requested opportunity to research the issue further.  Defendants' motions to dismiss plaintiffs' Title VI claim (Seventh Cause of Action) are **GRANTED** with **LEAVE TO AMEND.**

### I.   Eighth Cause of Action (§ 1983 Claim for Violation of Fourteenth Amendment Right to Family Relations).

Defendants argue that plaintiffs fail to state a claim for violation of Fourteenth Amendment rights to family relations against KUBERSKI, WILSON, CASTILLO, CARILLO, PATTERSON, HUANG, DEERING, and ROSTON.  Defendants argue that these defendants' actions were too remote in time from the death of Mr. Singh to have caused it.  As discussed above, causation issues are not properly decided on a motion to dismiss.  Defendants' motions to dismiss plaintiffs' Fourteenth Amendment family relations claim (Eighth Cause of Action) are **DENIED.**

39

**J.   <u>Ninth Cause of Action (Violation of U.S. Treaties)</u>.**

All defendants argue there is no private right of action under these treaties and cite two cases in support, *White v. Paulson*, 997 F. Supp. 1380, 1386 (E.D. Wash. 1998); *Johnson v. Quander*, 370 F. Supp. 2d 79, 1000 (D.D.C. 2005).  These cases stand for the principle a treaty gives rise to a private right of action either if it is "self-executing," i.e., if it expressly or impliedly creates a private right of action to enforce the rights described in the treaty, or if Congress enacts authorizing legislation.  *See also Raffington v. Cangemi*, 399 F.3d 900, (8th Cir. 2005) ("the [Convention Against Torture] is a non-self-executing treaty, which means there is no direct right of action for violation of the treaty, only for violation of any domestic law implementing the treaty).

Plaintiffs do not argue that the treaties at issue here, i.e., the International Covenant on Civil and Political Rights and the International Convention on the Elimination of all Forms of Racial Discrimination, are self-executing.  Plaintiffs cite no authority holding that Congress has passed legislation authorizing a private right of action under either of these treaties.  Plaintiffs instead argue that the Eighth Amendment authorizes a private right of action under these treaties.  Plaintiffs cite no authority in support of this contention.  Their argument is not persuasive.  Defendants' motion to dismiss plaintiffs' claims under U.S. treaties (Ninth Cause of Action) is **GRANTED**.  The dismissal of plaintiffs' Ninth Claim does not resolve plaintiffs' ability to argue that treaties establish minimum standards of conduct under the Eighth Amendment that are

**40**

1    binding on the Department of Corrections.

2

3    **K.    Tenth and Eleventh Causes of Action (Supplemental State
4         Claims).**

5         **1.    Statute of Limitations.**

6         Defendants first argue that plaintiffs' supplemental state

7    law claims (Failure to Summon Medical Care under Cal. Govt. Code

8    § 845.6; and Elder Abuse under Cal. Welf. & Inst. Code § 15600,

9    *et seq.*) are barred by the statute of limitations.  Tolling under

10   Cal. Civ. Proc. Code § 352.1 does not operate to toll the

11   statutory period for prisoners' state claims as it does for

12   federal claims.  In addition, disability (insanity) tolling under

13   Cal. Civ. Proc. Code § 352 does not apply to the state claims at

14   issue here.  Claims accruing before January 1, 2003, are

15   therefore subject to a one-year statute of limitations and are

16   barred, subject to any equitable tolling.  For the same reasons

17   discussed above, however, it is not clear based on the facts

18   alleged in the complaint that equitable tolling does not apply.

19   Defendants' motions to dismiss plaintiffs' supplemental state

20   claims (Tenth and Eleventh Causes of Action) on statute of

21   limitations grounds is **DENIED WITHOUT PREJUDICE.**

22

23        **2.    Eleventh Claim (Failure to Summon Medical Care,
24             Cal. Govt. Code § 845.6).**

25        Defendants argue that, even if not time-barred, plaintiffs

26   cannot state a claim for failure to summon medical care against

27   the medical defendants.  Defendants cite a California case in

28   support of this argument, *Nelson v. State of Cal.*, 139 Cal. App.

3d 72, 79-81 (1982), and assert that this case held that a claim for medical malpractice could not be used to ground a cause of action for failure to summon medical care under § 845.6.  *Nelson* distinguished between claims for failure to adequately treat (i.e., medical malpractice) and claims for failure to summon medical care when the prison official knows or should know the prisoner is in immediate need of medical care (i.e., Cal. Govt. Code § 845.6).

Plaintiffs argue in their opposition that their allegations are sufficient.  Plaintiffs point to the following allegations: the medical defendants were aware Mr. Singh was dying of malnutrition, but did nothing; and that the medical defendants were aware Mr. Singh was mentally ill and suicidal, but they failed to seek or provide mental health services for him.  (AC ¶¶ 65, 96)  These allegations, however, do not support that the medical defendants are liable for failure to seek medical care for Mr. Singh's need for *immediate* attention.  Additionally, Plaintiffs do not distinguish *Nelson* and cite no authority supporting that their allegations are the types of acts or omissions that are actionable under § 845.6.  Defendants' motion to dismiss plaintiffs' claim for failure to summon adequate medical care (Tenth Cause of Action) against the medical defendants is **GRANTED** with **LEAVE TO AMEND**.

Defendants WILLIAMS and HARTFIELD also argue that plaintiffs cannot state a claim for failure to summon medical care against them.  These arguments are based on Defendants' distinction between plaintiffs' allegations regarding individual defendants as opposed to plaintiffs' general allegations.  For the same

reasons discussed above, defendants' motion to dismiss plaintiffs' § 845.6 claim on these grounds is **DENIED.**

**VI.   <u>CONCLUSION</u>**

For all the foregoing reasons, defendants' motions to dismiss plaintiffs':

(a)   federal claims on statute of limitations and causation grounds is **DENIED WITHOUT PREJUDICE;**

(b)   First Cause of Action (§ 1983 Eighth Amendment inadequate medical care) is **DENIED;**

(c)   Second Cause of Action (§ 1983 First Amendment freedom of religion) is **DENIED;**

(d)   Third Cause of Action (§ 1983 Fourteenth Amendment equal protection) is **DENIED;**

(e)   Fourth Cause of Action (Americans With Disabilities Act) is **GRANTED;**

(f)   Fifth Cause of Action (Section 504 of the Rehabilitation Act of 1973) is **GRANTED;**

(g)   Sixth Cause of Action (*Monell* Violation) against ALAMEIDA, STEINBERG, and ADAMS is **GRANTED** on Eleventh Amendment grounds;

(h)   Sixth Cause of Action (§ 1983 Individual Supervisory Liability) against ADAMS, PATTERSON, and CARILLO is **DENIED;** Sixth Cause of Action against the other supervisory defendants is **GRANTED** with **LEAVE TO AMEND;**

43

1     (i)   Seventh Cause of Action (Title VI of the Civil

2             Rights Act of 1964) is **GRANTED** with **LEAVE TO**

3             **AMEND;**

4     (j)   Eighth Cause of Action (§ 1983 Fourteenth

5             Amendment right to family relations) is **DENIED;**

6     (k)   Ninth Cause of Action (U.S. Treaties) is **GRANTED;**

7             and

8     (l)   Tenth Cause of Action (supplemental state claim

9             for failure to summon medical care) against the

10            medical defendants is **GRANTED** with **LEAVE TO AMEND;**

11            and

12    (m)   Tenth and Eleventh Causes of Action (supplemental

13            state claims) on statute of limitations grounds is

14            **DENIED WITHOUT PREJUDICE.**

15     Any amended complaint shall be filed within 20 days of

16  service of this order.

17

18

19  **SO ORDERED.**
    **DATED: October _4__, 2005.**

20

21                      **/s/ Oliver W. Wanger**

22                    _____

23                       **Oliver W. Wanger**
                     **UNITED STATES DISTRICT JUDGE**

24

25

26

27

28